IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    *Respondent*,

    v.

TI'QUAN DINKINS,

    *Petitioner*.

Criminal Action No.: ELH-16-0548
Related Civil No.:  ELH-20-0943

## MEMORANDUM

The self-represented Petitioner, Ti'Quan Dinkins, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.  ECF 123 ("Motion").  In his Motion, Dinkins challenges the validity of conviction for brandishing a firearm, in violation of 18 U.S.C. § 924(c), under the rationale of *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019).  Noting that his § 924(c) conviction was predicated on the offense of carjacking, under 18 U.S.C. § 2119, Dinkins contends that carjacking does not qualify as a "crime of violence."

The government opposes the Motion.  ECF 132.  It contends that carjacking under federal law contains as an element the use of force, violence, or intimidation, or the threat of force or violence, and therefore it is a crime of violence under the force clause of 18 U.S.C. § 924. Dinkins has replied.  ECF 133; ECF 141.[1]

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

---

[1] The reply was docketed twice.

## I.      Factual and Procedural Background

On April 27, 2017, the defendant and a codefendant, Jerome Pittman, were charged in a First Superseding Indictment.  ECF 4.  Of relevance here, Dinkins was charged with the offenses of conspiracy to commit carjacking, in violation of 18 U.S.C. § 371 (Count One); carjacking, in violation of 18 U.S.C. § 2119(1) (Count Four); and using, carrying, and brandishing a firearm during and in relation to a crime of violence (*i.e.*, carjacking), in violation of 18 U.S.C. § 924(c) (Count Five).  ECF 4.  A Second Superseding Indictment, returned on July 6, 2017, named an additional defendant, Rashad Harris.  ECF 34.[2]  As to Dinkins, the charges were unchanged.

Count Five of the Second Superseding Indictment charged a violation of § 924(c).  The Count alleged that the § 924 offense was predicated on the crime of carjacking, as charged in Count Four.  Count Five of the Second Superseding Indictment stated, ECF 34 (emphasis added):

> On or about May 19, 2016, in the District of Maryland, the defendants . . . knowingly used, carried, and brandished a firearm during and in relation to a crime of violence for which each may be prosecuted in a court of the United States, to wit: the carjacking in violation of Title 18, United States Code, Section 2119(1) of [Victim] R.S. *as charged in Count Four of this Second Superseding Indictment*.

The defendant entered a plea of guilty on October 11, 2017, to all three counts with which he was charged.  ECF 63.  The plea was tendered pursuant to a Plea Agreement (ECF 64), under Fed. R. Crim. P. 11(c)(1)(C).  According to the terms of the Plea Agreement, the parties agreed to a total sentence of eight and a half years of imprisonment (*i.e.*, 102 months).  *Id.* ¶ 8(f).

The Plea Agreement specified that the § 924(c) offense in Count Five was predicated on the carjacking charged in Count Four. *See* ECF 64, ¶¶ 3, 4 (summarizing the elements of Counts

---

[2] Pittman was also charged with a second carjacking (Count Two), during which he discharged a firearm (Count Three).

Four and Five).  As to Count Five, it provided, in part, "that the Defendant knowingly used and carried a firearm during and in relation to the commission of the crime charged in Count Four in the Second Superseding Indictment, that is carjacking in violation of 18 U.S.C. § 2119").  *See* ECF 64, ¶ 4.

The Plea Agreement also contained a Statement of Facts.  *Id.* at 10-11.  As set forth in the Plea Agreement, on May 19, 2016, the defendant was driving a Mercedes-Benz that had been reported stolen.  Codefendant Pittman was riding in the front passenger seat and the other codefendant, Harris, was riding in the back.  The defendant crashed the vehicle and, because the car was stolen and the defendant was carrying a firearm, the three occupants abandoned the vehicle and walked to a nearby gas station, where they were captured on video surveillance purchasing a few items.  *Id.* at 10.

A few moments later, the three conspirators carjacked the driver of a Dodge Durango who was pulling up to a traffic light adjacent to the gas station.  The defendant approached the driver's side window, brandished a firearm, and pressed the firearm into the driver's stomach while stating: "You know what it is."  Pittman entered the front passenger seat as Harris entered the rear passenger seat.  The driver exited his vehicle, the defendant entered the driver's seat, and the three drove off.  *Id.*

The following day, the three conspirators took a "selfie" photograph of themselves in the Durango, using the victim's cell phone.  *Id.* at 11.  According to the government, the photo was recovered by the victim from the iCloud.  ECF 136 at 3.  The defendants were wearing clothing that matched clothing worn by the individuals captured on the video surveillance at the gas station.  *Id.*  And, the victim identified the men in the photograph as the persons who had committed the carjacking.  *Id.*

3

Sentencing was held on December 14, 2017.  According to the Presentence Report ("PSR," ECF 70), the defendant was born in October 1996 and was 21 years old at the time of sentencing.  *Id.* at 3.  He had a final offense level of 19 for Counts One and Four (*id.* ¶ 27), with a criminal history category of II.  *Id.*¶ 35.  His advisory sentencing guidelines called for a sentence of 33 to 41 months of incarceration for Counts One and Four, and a mandatory, consecutive term of 84 months for Count Five.  *Id.* ¶ 59.  Thus, the total advisory sentencing range was 117 to 125 months of imprisonment.

Defendant was sentenced in accordance with the parties' Plea Agreement.  In particular, he was sentenced to 18 months' imprisonment as to Count One, a concurrent term of 18 months' imprisonment as to Count Four, and 84 months' imprisonment, consecutive, as to Count Five, resulting in a below-guidelines sentence of eight and a half years (102 months), with credit dating from October 7, 2016.  ECF 78 (Judgment).  Dinkins did not appeal his conviction or sentence.

On April 13, 2020, Dinkins filed the Motion.  He lists four grounds.  But, in effect, he advances one contention:  that his conviction for Count Five, under § 924(c), is unconstitutional in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Johnson*, 576 U.S. 591 (2015).  Among other things, Petitioner asserts that his offense "[i]s not a crime of violence no one was hurt."  ECF 123 at 4.

## II.    Discussion

### A.

The grounds for collateral relief under 28 U.S.C. § 2255 are narrower than those for relief on direct appeal.  A motion under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds:  (1) the sentence was imposed in

violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Pursuant to § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). Notably, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

Under 28 U.S.C. § 2255(b), the Court must hold a hearing on the motion to vacate, "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). This is such a case. No hearing is necessary.

**B.**

As noted, Dinkins relies on the Supreme Court's ruling in *Johnson v. United States*, 576 U.S. 591 (2015). ECF 186. In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act's definition for violent felony, at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Id.*

Thereafter, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  In that case, the Supreme Court applied *Johnson* to the residual clause of the crime of violence definition in 18 U.S.C. § 16(b). *Dimaya*, 138 S. Ct. at 1210.

Dinkins also relies on *United States v. Davis*, 139 S. Ct. 2319 (2019).  The Supreme Court issued its decision in *Davis* on June 24, 2019, ruling that the "residual clause" definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague.  *Davis*, 139 S. Ct. at 2334.

Under federal law, a person who uses or carries a firearm "during and in relation to any crime of violence" or who "possesses a firearm" in "furtherance of any such crime" is subject to conviction for the underlying crime of violence as well as for the firearm offense.  *United States v. Taylor*, ___ F.3d ___, 2020 WL 6053317 at *2 (4th Cir. Oct. 14, 2020); *see* 18 U.S.C. § 924(c)(1)(A).  A crime of violence is defined in 18 U.S.C. § 924(c)(3) as "an offense that is a felony" and "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Subsection (A) of 18 U.S.C. § 924(c)(3) is commonly referred to as the "force clause" or "elements clause," while subsection (B) is referred to as the "residual clause."

As indicated, in *Davis*, 139 S. Ct. 2319, the Supreme Court ruled that the residual clause in § 924(c)(3)(B) was unconstitutionally vague.  *See id.* at 2336.  However, Dinkins's § 924(c) conviction was not predicated on the residual clause.  Rather, it was predicated on his carjacking offense, as charged in Count Four.  Carjacking categorically qualifies as a "crime of violence" under the force clause.

In *United States v. Evans*, 848 F.3d 242 (4th Cir. 2017), the Fourth Circuit considered whether carjacking qualifies as a crime of violence within the meaning of § 924(c), even in the absence of bodily injury to the victim. *Id.* at 245. It looked to the force clause in 18 U.S.C. § 924(c)(3)(A). *Id.* The Court observed that "physical force" as used in the force clause "requires the use of violent force," and this "necessarily 'connotes a substantial degree of force.'" *Evans*, 848 F.3d at 245 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)) (some internal quotation marks omitted). Further, the Court stated that the "degree of force employed must be capable of causing physical pain or injury to another person." *Id.* (citations and internal quotation marks omitted).

In determining whether a particular crime is a crime of violence under the force clause, the Fourth Circuit applied the categorical approach articulated in *Descamps v. United States*, 570 U.S. 254 (2013), and other cases. This approach analyzes only the elements of the crime at issue, not the "means by which the defendant committed the crime." *Evans*, 848 F.3d at 246.

The carjacking statute, § 2119 of 18 U.S.C., states:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce form the person or presence of another by force and violence or by intimidation, or attempts to do so, shall [be punished as set forth in subsections (1)-(3)].

Relying on *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), the *Evans* Court concluded that carjacking requires the use, attempted use, or threat of physical force, even if the offense only involves intimidation, because "the term 'intimidation' as used in the statutory phrase 'by force and violence or intimidation,' denotes a threat to use violent force." *Evans*, 848 F.3d at 246.

The *McNeal* case, 818 F.3d 141, on which *Evans* relied, is also instructive.   There, the Fourth Circuit considered whether bank robbery is a "crime of violence" under the force clause. The bank robbery statute requires the subject property to be taken "by force and violence, or by intimidation."   18 U.S.C. § 2113(a).   That phrase is identical to the language used in the carjacking statute.   *Compare id.* § 2113(a) ("by force and violence, or by intimidation"), with *id.* § 2119 ("by force and violence or by intimidation").   And, the *McNeal* Court concluded that bank robbery requires the use, attempted use, or threat of physical force:  "A taking 'by force and violence' entails the use of physical force.   Likewise, a taking 'by intimidation' involves the threat to use such force." *McNeal*, 818 F.3d 153.

Similarly, the Fourth Circuit has ruled that Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), qualifies as a crime of violence under the force clause of 18 U.S.C. § 924(c). *See United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019), and *Stokes v. United States*, 140 S. Ct. 640 (2019).

In sum, Dinkins's conviction for carjacking, alleged in Count Four of the Second Superseding Indictment, qualifies as a crime of violence under the force clause.   Therefore, his conviction in Count Five, under 18 U.S.C. § 924(c), which was predicated on that crime, remains valid.

### III.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.   A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order.   *Untied States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).   A certificate of appealability may be issued "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Reasonable jurists would not find defendant's claims debatable. Therefore, a certificate of appealability shall not issue.[3]

A separate Order follows.


Date:   October 29, 2020                                  _____/s/_____
                                                         Ellen L. Hollander
                                                         United States District Judge

---

[3] This ruling is without prejudice to Dinkins's right to seek a certificate of appealability from the Fourth Circuit.